413 So.2d 1146 (1981)
Ex parte Jack YOUNGBLOOD
(re L. W. LIMBAUGH MINING & CONSTRUCTION COMPANY v. Jack YOUNGBLOOD).
79-657.
Supreme Court of Alabama.
March 27, 1981.
Rehearing Denied May 8, 1981.
*1147 William E. Mitch of Cooper, Mitch & Crawford, Birmingham, for petitioner.
John W. Clark, Jr. and William T. Mills, II of Porterfield, Scholl, Clark & Harper, Birmingham, for respondent.
MADDOX, Justice.
We granted certiorari to review the question of whether an employer's nonfraudulent representations which unintentionally mislead an employee in filing his workmen's compensation claim will toll the one-year statute of limitations contained in Code 1975, § 25-5-80.
The essential facts of this case are not in dispute. On August 27, 1974, petitioner, Jack Youngblood, suffered a fractured hip in the course of his employment with respondent, L. W. Limbaugh Mining & Construction Company. Petitioner was treated for his injuries by Dr. Benjamin Meyer, a physician selected and authorized by Limbaugh to provide medical services to its employees. In performing surgery on petitioner's hip, it was necessary for Dr. Meyer to insert a hip nail. After an extended period of recovery, petitioner returned to work on June 9, 1975.
Over the period of petitioner's total temporary disability, he was treated by Dr. Meyer and received workmen's compensation benefits from Limbaugh. The last of these total temporary disability payments was made on August 5, 1975. Petitioner did not file his claim for permanent disability benefits until March 17, 1977, some nineteen months after he received his last payment of compensation; however, the claim was not filed within the period set forth in Code 1975, § 25-5-80, which provides:
In case of personal injury, all claims for compensation under this article and article 2 of this chapter shall be forever barred unless within one year after the accident the parties shall have agreed upon the compensation payable under this article and article 2 of this chapter or unless within one year after the accident one of the parties shall have filed a verified complaint as provided in section 25-5-88.... Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment....
*1148 At trial, petitioner argued that the applicable statute of limitations was tolled as a result of statements made by Dr. Meyer which misled him in filing his claim. The record indicates that on several occasions Dr. Meyer informed petitioner that he could not determine the extent of any permanent disability until the hip nail was removed in a subsequent operation. When questioned by petitioner concerning the extent of his permanent disability, Dr. Meyer told petitioner he "should wait until the nail was removed and see how he got along and what he could do and how he could respond to his job activities and then [he (Dr. Meyer)] would estimate his permanent disability." Throughout this time, Dr. Meyer, in accordance with the requirements of Code 1975, § 25-5-77, prepared and sent written reports concerning the nature and extent of petitioner's injuries to Limbaugh and Travelers Insurance Company, Limbaugh's workmen's compensation insurance carrier. After performing the additional operation for removal of the hip nail, Dr. Meyer estimated that petitioner would suffer a 25% total disability of the whole body. Petitioner thereafter filed his claim for permanent disability benefits.
On the basis of this evidence, the trial court held that petitioner acted reasonably in relying on Dr. Meyer's representations and withholding his claim until removal of the hip nail. Since it was part of Dr. Meyer's statutory obligation to advise Limbaugh of the nature and extent of petitioner's injuries, the court concluded that there was an equitable tolling of the statute of limitations when the physician selected by Limbaugh did not provide an opinion as to the extent of any permanent disability, and that petitioner was lulled into filing his claim beyond the statutory time limit.
On appeal, the Court of Civil Appeals, conceding for the sake of argument that Dr. Meyer was Limbaugh's agent, reversed and remanded. That court found no justification for tolling the statute. Relying on Dorsey v. United States Pipe & Foundry Co., 353 So.2d 800 (Ala.1977), the court reasoned that unless the petitioner could establish either fraud or common law estoppel, an employer's misleading statements would not toll the running of the statute of limitations. We disagree with the Court of Civil Appeals' application and interpretation of Dorsey, and, therefore, reverse and remand.
In Dorsey, this Court granted certiorari to review the sole question of whether fraud would toll the one-year statute of limitations applicable to workmen's compensation actions. With regard to this question, the Court reached the following conclusion:
We hold, therefore, that when acts are done by the employer which lead the employee to believe that liability under the statute is admitted and will not be contested, or where the acts of the employer either falsely misrepresent to the employee or fraudulently conceal from him the truth of the facts upon which the liability of the employer depends, the running of the statute of limitations may be tolled, and it is immaterial whether the employee relies upon actual fraud or mere estoppel. Pacific Employers Ins. Co. v. Industrial Accident Commission, 66 Cal.App.2d 376, 152 P.2d 501 (1944).
Dorsey, supra, at 353 So.2d 803. This holding is expressly limited by its language and addresses only the effect of fraud or intentional misrepresentation on the running of the statute of limitations. Dorsey did not address the effect of representations, even though made innocently, which nevertheless mislead an employee in filing his claim. The legal effect of an innocent representation is the central issue in the present case; therefore, this case goes well beyond the substantive impact of Dorsey.
Limbaugh candidly admits in its brief that without the existence of fraud or estoppel, Dorsey has absolutely no application. We agree, but there is language in Dorsey which indicates that something less than fraud or estoppel may suffice in tolling the statute. At 353 So.2d 802-803, the Court quoted with approval the following language from Mackanitz v. Pittsburgh & W. Va. R. Co., 157 Pa.Super. 359, 43 A.2d 586 (1945):

*1149 The courts may not extend the period of repose, ex gratia, or what is the same thing, permit the filing of a petition nunc pro tunc, in aid of a meritorious claimant or to relieve against the hardship of particular circumstances although the running of the statute may be tolled by the declarations and conduct of those who invoke its protection.... Where a defendant's representatives so deport themselves in their dealings with a claimant as to mislead or deceive him, whether innocently or with fraudulent purpose, and induce him to postpone the filing of his petition until the period of limitation has expired, the defense of inordinate delay is not available, as a defendant cannot be permitted to benefit from a neglect for which he is himself primarily responsible. (Citations omitted.) [Emphasis supplied.]
When the employer is primarily responsible for the delay, courts usually apply equitable principles and hold that the employer is estopped from asserting the limitation period. See, e.g., Fulton v. Philadelphia Rustproof Co., 200 Pa.Super. 467, 190 A.2d 459 (1963); Palmer v. City of Pittsburgh, 9 Pa.Cmwlth. 526, 308 A.2d 179 (1973). In Behenna v. Meyers, 163 Pa.Super. 200, 60 A.2d 608 (1948), the court applied these principles when an employee had, among other things, complied with insurer's request for a medical examination, submitted to ten weeks continuous medical treatment and discussed his claim for workmen's compensation with his employer in an effort to secure information to enable him to file a timely report. Similar circumstances existed in the instant case which the trial court' could have considered in determining whether the petitioner was deceived or misled. The trial court obviously determined that the employer was primarily responsible for the delay. We hold, therefore, that the Court of Civil Appeals erred. The representations of an employer or its insurance carrier may be such as to estop them from asserting the statute of limitations as a bar to a claim for workmen's compensation, if the employer or the carrier, or their representatives, in their dealings with the claimant, conduct themselves in such a manner, whether innocently or fraudulently, as to mislead the claimant into believing that he can postpone the filing of his claim until the period of limitation has expired. Whether the employer or the carrier, or their representatives were primarily responsible for the delay is a fact question for the factfinder at the trial level. We also hold that the question of whether a person is a representative of the employer or the carrier is essentially one of fact also. This construction of the limitations provisions of the workmen's compensation statute is in accordance with the well recognized rule that the workmen's compensation law must be liberally construed in furtherance of its beneficent and humanitarian purposes. Gilmore v. Rust Engineering Co., 289 Ala. 46, 265 So.2d 591 (1972); Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968); City of Foley v. Terry, 278 Ala. 30, 175 So.2d 461 (1965).
Accordingly, petitioner's cause is due to be reversed and remanded to the Court of Civil Appeals for further review in accordance with the rule we announce in this opinion.
REVERSED AND REMANDED.
FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., dissents.
TORBERT, Chief Justice (dissenting).
I respectfully dissent.
I believe it unnecessary to reach the question of whether an innocent misrepresentation will toll the statute of limitations. As the Court of Civil Appeals held and the record reflects, the trial judge incorrectly concluded that the representation of Mr. Youngblood's physician (Limbaugh's agent) misled Mr. Youngblood into delaying the workmen's compensation claim. At issue is whether the statute of limitations is tolled by the physician's representation that the extent of Mr. Youngblood's permanent disability would be determined at the time Mr. Youngblood's hip pin was removed. I quote from the record:

*1150 Q. And at the time you were operated on, you knew you were having a lot of problems here with your hip, didn't you?
A. Yes.
Q. And you knew that it was to a certain extent it was disabled [sic] to you, didn't you, sir?
A. Yes, sir.
Q. And you knew that after Dr. Meyer put that plate or whatever it was in your hip, you knew that you were going to have some problems with it afterwards, didn't you?
A. Yes.
. . . .
Q. Okay. And you knew that at the time, when you started back to work, didn't you, that you were going to have some problems, didn't you?
A. Yes.
Q. And you knew that you were going to have some disability of some type, didn't you, sir?
A. I knowed I wasn't ever going to be right no more.
Q. Yes, sir.
THE COURT: What? I didn't
A. I said, I knowed I never would, you know, be right no more.
Q. And that was something that Dr. Meyer didn't need to tell you because that was something you knew yourself, didn't you, sir?
A. Yes, sir. I knowed I wouldn't.
Q. But, you just didn't know how much disability
A. I didn't know how much disability.
Q. But, you knew that you were going to have some disability?
A. I knowed I was going to have some problem, yes, sir.
Q. And you knew that before the year after the accident expired, didn't you?
A. Yes, sir.
Q. All right. Did you consult a lawyer during that time?
A. No, sir.
. . . .
Q. All right. Now, back when you had your second operation, you had that pin taken out, Dr. Meyer never told you that the Traveler's were going to pay you anything, did he?
A. No, sir.
Q. Dr. Meyer never made any promises of any type to you that anybody was going to pay you any permanent disability of any type, did he, sir?
A. No, sir.
Q. And the only thing Dr. Meyer told you was that you were going to have a disability rating of some type, is that right?
A. Yes, sir.
Q. But, you knew that already, didn't you, sir?
A. Yes, but I didn't know what extent.
. . . .
Q. Okay. But, at any rate Dr. Meyer never promised you that anybody was going to pay you anything?
A. No, sir.
Q. And he never told you that he was going to see that you got compensation benefits?
A. No, sir.
Q. And he never told you to wait a certain length of time before filing any claim to get compensation benefits, did he, sir?
A. He didn't tell me to file a claim.
Q. That's right. And he didn't tell you not to file one?
A. No, sir.
Q. And you didn't tell him that you were going to be filing a claim?
A. No, sir. I just asked him what disability I would be.
In spite of the presumption accorded the trial judge's ore tenus finding of fact, see, Donnelly v. Doak, 346 So.2d 414 (Ala.1977), I believe it is apparent the trial judge erred when he found that the physician's statements misled plaintiff into delaying the filing of this lawsuit. Additionally, even assuming the physician's representations were misstatements of fact, they were not of the character which will toll the statute of limitations, *1151 because a fixed degree of disability is not a condition precedent to a claim under the Workmen's Compensation Act. See, Pittman v. City Stores, Inc., 204 Tenn. 650, 325 S.W.2d 249 (1959); Stillwater Floral Co. v. Murray, 380 P.2d 694 (Okl.1962).